[No. F049797. Fifth Dist. July 2, 2007.]

THE PEOPLE, Plaintiff and Respondent, v.
JARED JUSTIN MARKS, Defendant and Appellant.

COUNSEL

Jerome P. Wallingford, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Mary Jo Graves, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez and Lewis A. Martinez, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**GOMES, Acting P. J.**—A man returning home from work one evening saw that his back door had been kicked open and that "everything [had been] kind of torn up in the house." He walked across the street, where his neighbor told him someone had been at his house earlier, and returned to his yard, where Jared Justin Marks pointed a rifle at him and told him to lie on the ground and hand over his keys and wallet. Moments after tossing his wallet and his wife's car keys to Marks, he heard a "commotion out front" that might have been a car driving away. Police recovered his wife's car that evening, arrested Marks the next day, and located his wife's keys at the scene of the arrest.

## PROCEDURAL BACKGROUND

A jury found Marks guilty of first degree robbery (§§ 211, 212.5, subd. (a)),[1] carjacking (§ 215, subd. (a)), first degree burglary (§§ 459, 460, subd. (a)), and assault with a firearm (§ 245, subd. (a)(1)) and found true the allegations of personal use of a firearm during the robbery and the carjacking (§ 12022.53, subds. (a)(4), (a)(5), (b)) and the assault with a firearm (§ 12022.5, subd. (a)). At a bifurcated trial, the court found true the allegations of one serious felony prior (§ 667, subd. (a)), one strike prior (§§ 667, subds. (b)–(j), 1170.12, subds. (a)–(e)), and one prison term prior (§ 667.5, subd. (b)). The court imposed an aggregate 35-year eight-month prison term.

## ISSUE ON APPEAL

Marks argues that his right to due process was violated by the court's conducting a portion of the jury selection off the record, outside the presence of the prospective jurors, and outside his presence without his waiver, whether express or implied, oral or written, personal or by counsel. The

---

[1] All statutory references are to the Penal Code unless otherwise noted.

Attorney General agrees that the portion of the jury selection at issue was off the record, outside the presence of Marks and the prospective jurors, and without his waiver but argues that no due process violation ensued. On a showing that the portion of the jury selection at issue here constituted a critical stage of his trial, we will reverse the judgment.

## DISCUSSION

Jury selection took place over a two-day period. The second day's minute order shows: "Court and counsel discuss jury selection that was done in chambers off the record before the jury was sworn." The second day's reporter's transcript of jury selection shows: "THE COURT: Counsel, let me see you at side bar [*sic*] and bring your jury ladders. [¶] Go ahead and stretch, ladies and gentlemen, while I talk to the attorneys for a few minutes. [¶] (Side bar [*sic*] discussion held.) [¶] THE COURT: Let's go back on the record there People versus Marks. Everyone who should be here is here. We have our jury, ladies and gentlemen," at which point the court excused six prospective jurors and asked, "Counsel, would you both agree that this was our jury?," and both counsel replied, "Yes."

Even though the clerk's transcript and the reporter's transcript denote chambers and sidebar, respectively, as the locations of the portion of the jury selection at issue, Marks cites the references in his attorney's new trial motion and in the prosecutor's opposition, respectively, to "jury deliberation room" and "jury room" as authority for his argument that the portion of the jury selection at issue occurred in a "deliberation room." His attorney's response to the prosecutor's opposition denotes chambers as the location.

■ "As a general rule, a record that is in conflict will be harmonized if possible. [Citation.] If it cannot be harmonized, whether one portion of the record should prevail as against contrary statements in another portion of the record will depend on the circumstances of each particular case. [Citation.]" (*People v. Harrison* (2005) 35 Cal.4th 208, 226 [25 Cal.Rptr.3d 224, 106 P.3d 895].) Here, the clerk's transcript, the prosecutor's opposition, and Marks's attorney's motion and response all show that the portion of the jury selection at issue occurred not at sidebar but somewhere outside the presence of the prospective jurors. Only one portion of the record, the reporter's transcript, shows that the portion of the jury selection at issue occurred at sidebar within the presence of the prospective jurors. Applying the general rule, we determine that the portion of the jury selection at issue occurred somewhere outside both Marks's presence and the presence of the prospective jurors. Exactly where is immaterial.

In his new trial motion, Marks's attorney states that after going off the record the court told both counsel that "the jury would be selected . . . outside their presence. Both sides balked at the idea questioning whether you[r] honor [*sic*] were [*sic*] serious or not. When the answer came back in the affirmative, the selection process took place. Mr. Marks was not present. [¶] After jury selection was completed, . . . [w]hat transpired outside the presence of the jury and Mr. Marks was then put on the record."

The motion continues, "Never did Mr. Marks waive his right to be present during the selection of the jury. [¶] . . . Ironically, . . . I wanted to remove [Mr. (672075), the prospective juror who became the foreperson,] because he stated if the defendant did not take the stand he would presume he was guilty. He was the same juror who wrote a note to the court after hearing my closing statement inquiring whether defense counsel could explain why the defendant possessed one of the stolen items when arrested by the police. Your honor [*sic*] simply replied, 'no.' Mr. Marks never took the stand at trial. [¶] [Mr. (672075)] was not removed from the jury because how [*sic*] the selection process took place. Without being able to look at the jury while deciding whether or not to keep them, I simply forgot about him."

In his opposition, the prosecutor notes that after the court and both counsel finished questioning the prospective jurors "the attorneys went back into the jury room with the Court and had a short discussion about which jurors, if any, the parties planned to excuse through the use of remaining peremptory challenges. Counsel for the Defendant asked if he could step out into the courtroom to take another look at the jury panel to make sure he did not forget anybody and, with the Court's permission, did so. When he returned, the parties, in order, informed the Court of whom they planned to excuse. When it was determined that both parties would accept the panel without requiring further questioning of yet unquestioned prospective jurors, the parties stepped back into open court." The opposition notes that after the court "excused the jurors whom the attorneys had indicated would be excused and constituted the jury with the remaining prospective jurors," the court asked, "Counsel, would you both agree that this was our jury?," and both counsel replied, "Yes."

In his response, Marks's attorney notes that he "solicited no waiver of personal appearance from Mr. Marks, written or otherwise, excusing his absence from the process of exercising peremptory challenges," that the first mention of "conducting peremptory challenges outside the defendant's presence" occurred when the court "announced this proposal in chambers on the second day," and that he and the prosecutor "were surprised at the notion" of

"conducting peremptory challenges outside the defendant's presence" but "neither expressed an actual objection." He states that he had "no time to discuss [his] reasons for peremptory challenges with the defendant," who "had no input into those challenges." He observes that his "failure to excuse [Mr. (672075)] was not a strategic or tactical decision" but just something he "forgot" even though Mr. (672075) said during voir dire "that, in essence, he would presume [Marks] guilty if [he] did not take the stand" and sent the court a note during deliberations asking if Marks's attorney could "explain how [Marks] had the stolen items in his possession."

The record sheds light on the references in Marks's attorney's response to the voir dire of, and to the note from, Mr. (672075), the prospective juror who later became the jury foreperson:

"Q [MARKS'S ATTORNEY]. I'm a big fan of Bob and Tom in the morning, and they always talk about if someone is innocent, they have no problem taking the stand, the guilty person will sit back there. Does anybody believe the same way that Bob and Tom does?

"A [MR. (672075)]. I do. [¶] . . . [¶]

"Q. What if the law, though, tells you not to take that into consideration?

"A. Well, I'd do my best to put it out of my mind, but I would still have those feelings. I mean, if a person is innocent, why wouldn't he want to talk?

"Q. Do you think there could be other reasons why a person doesn't want to take the stand?

"A. Probably, but his attorney could explain that maybe. I said earlier when we were asked questions, that I would like to hear something from the defense. If the prosecutor gives me a story and the defense can change it by having his client tell me about it and clear it up in my mind, I would just like to hear from the defense side.

"Q. What if his attorney can't actually say why he did not take the stand? As a matter of fact, both sides would not be able to comment on it?

"A. I'd have a hard time with that.

"Q. Like I said, I have no idea if this is going to occur, but the problem is, I'm not sure how the evidence is going to come out. And I can't stop in the

middle of a trial to determine, okay, at this point he is not going to testify and whether you are going to be satisfied with it. [¶] With your answers that you have given right now and us being unsure whether or not he is actually going to take the stand or not, would you feel better suited sitting on another type of jury?

"A. Probably."

After questioning other prospective jurors and Mr. (672075) alike, the court returned to the prospective juror who later became the jury foreperson:

"Q. Mr. (672075), the law does require—we talked about this at length yesterday, that if the defendant does not testify, you cannot use that against him. We talked about a lot of people want to hear both sides of the story. That's how we raised our children, in business and how we deal with people. You want to hear both sides of the story. You may not get both sides here. You might not get all of them. Even though you might want it and make it difficult, can you still follow that law?

"A. Yes, sir.

"THE COURT: Counsel, pass for cause? Mr. [Marks's Attorney]?

"[MARKS'S ATTORNEY]: Side bar [*sic*].

"THE COURT: Yes.

"(Side bar [*sic*] discussion held.)[2]

"THE COURT: Mr. [Prosecutor]?

"Go ahead and have a seat, ladies and gentlemen.

"Mr. [Prosecutor], pass for cause?

"[PROSECUTOR]: Pass for cause."

Back on the record in the presence of Marks and the prospective jurors, the court abruptly announced, "We have our jury, ladies and gentlemen." Marks

---

[2] The reporter's transcript is silent as to whether Marks's attorney exercised a challenge for cause at that juncture.

asked his attorney "why [Mr. (672075)] was still there." His attorney replied, "I'm sorry. I just messed up. I forgot about him."

Mr. (672075)'s note to the court during deliberations was brief and to the point: "Can the jury ask the defence [*sic*] how Jared Marks was in possesion [*sic*] of the car keys[?]" The reporter's transcript shows that the court informed counsel, "We will just bring him in tomorrow and tell him, 'No,'" and that on the next day the court told Mr. (672075), "The answer is no," and he replied, "Okay."

At the hearing on the motion, Marks's attorney criticized as "not totally correct" the prosecutor's opposition narrative that characterized his return to "the courtroom to take another look at the jury panel to make sure he did not forget anybody." "What happened," he countered, "is we went back there, both of us were surprised by your decision to select the jury in the back. I told your Honor, 'I can't even remember any of the faces that go with the names.' [¶] And you said, 'Just go outside and take a peek.' [¶] At that time I went outside to see if I forgot anybody or if I had a chance after we had selected the jury.'" He saw that Mr. (672075) "was still there" in the courtroom and recalled that when Marks asked him "why he was still there" he said, 'I'm sorry. I just messed up. I forgot about him.'" Characterizing as "the ultimate question" the court's contemporaneous question, "Is this our jury?," he argued "that was the jury I selected," not "the jury that I wanted or would have selected in front of the jury as normally we select one," and admitted committing an "error" that had no "tactical" or "strategic" purpose.

The prosecutor characterized the issue in the motion as whether Marks was denied his right to be present during the jury selection because of the "two occasions the court and counsel had discussions out of his presence." "Those two occasions were once at sidebar to discuss a possible challenge for cause, and in chambers when the Court asked for a preview of who we wanted to excuse by using a peremptory challenge." The court denied the motion.

 The rule is established that a defendant has a federal constitutional right that emanates not only from the confrontation clause of the Sixth Amendment but also from the due process clause of the Fourteenth Amendment to be present at any stage of the criminal proceedings " 'that is critical to its outcome if his presence would contribute to the fairness of the procedure.' " (*People v. Bradford* (1997) 15 Cal.4th 1229, 1356–1357 [65 Cal.Rptr.2d 145, 939 P.2d 259] (*Bradford*), quoting *Kentucky v. Stincer* (1987) 482 U.S. 730, 745 [96 L.Ed.2d 631, 107 S.Ct. 2658].) Due process "clearly

requires that a defendant be allowed to be present 'to the extent that a fair and just hearing would be thwarted by his absence.' " (*Ibid.*, quoting *Snyder v. Massachusetts* (1934) 291 U.S. 97, 108 [78 L.Ed. 674, 54 S.Ct. 330], overruled on another ground in *Malloy v. Hogan* (1964) 378 U.S. 1, 2 [12 L.Ed.2d 653, 84 S.Ct. 1489].)

■ Likewise, the rule is settled "that a defendant is not entitled to be personally present either in chambers or at bench discussions that occur outside of the jury's presence on questions of law or other matters as to which the defendant's presence does not bear a ' " 'reasonably substantial relation to the fullness of his opportunity to defend against the charge.' " ' [Citations.] Sections 977 and 1043 do not require the defendant's presence, or a written waiver, unless that standard has been met. [Citations.]" (*Bradford, supra,* 15 Cal.4th at p. 1357.) " 'Defendant has the burden of demonstrating that his [or her] absence prejudiced his [or her] case or denied him [or her] a fair trial.' " (*People v. Panah* (2005) 35 Cal.4th 395, 443 [25 Cal.Rptr.3d 672, 107 P.3d 790] (*Panah*), quoting *Bradford,* at p. 1357.)

In *Panah,* on a record of only a "speculative" claim of prejudice, the California Supreme Court rejected a challenge to the defendant's "exclusion from an in camera proceeding during voir dire at which the prosecutor and defense counsel passed for cause and each exercised three peremptory challenges." (*Panah, supra,* 35 Cal.4th at p. 443.) Here, on the other hand, the record shows that Mark's attorney failed to excuse Mr. (672075) because he forgot "the faces that go with the names" during the portion of the jury selection that the court conducted outside his presence and outside the presence of the prospective jurors. In light of the dissimilarity of the records here and in *Panah,* the Attorney General understandably neither relies on nor cites to that case.

Instead, the Attorney General relies on a pair of California Supreme Court capital cases. (*People v. Ochoa* (2001) 26 Cal.4th 398, 433 [110 Cal.Rptr.2d 324, 28 P.3d 78] (*Ochoa*), disapproved on another ground by *Ring v. Arizona* (2002) 536 U.S. 584, 603 [153 L.Ed.2d 556, 122 S.Ct. 2428], as stated in *People v. Prieto* (2003) 30 Cal.4th 226, 263, fn. 14 [133 Cal.Rptr.2d 18, 66 P.3d 1123]; *People v. Holt* (1997) 15 Cal.4th 619, 706 [63 Cal.Rptr.2d 782, 937 P.2d 213] (*Holt*).) In *Ochoa,* a court made sidebar inquiries of prospective jurors whose jury questionnaires designated certain items "confidential." (*Ochoa,* at p. 433.) The court's inquiries occurred out of the defendant's presence, but he failed to show "any way in which his presence at the sidebar conferences bore a reasonably substantial relation to his opportunity to defend

himself." (*Ibid.*) On the ground that his claims were "based on undue speculation," the California Supreme Court denied relief. (*Ibid.*)

In *Holt,* a court conducted several proceedings in the defendant's absence, among which were a "conference on jury selection procedures," "in-chambers discussion of juror hardship forms" and of "the timing of questioning individual jurors on hardship," "sidebar discussions of a challenge for cause," and an "in-chambers examination of" a juror who was apparently a sitting, not a prospective, juror. (*Holt,* 15 Cal.4th at p. 707, fn. 29.) Like the defendant in *Ochoa,* the defendant in *Holt* failed to show that these proceedings "bore any substantial relation to [his] opportunity to defend." (*Id.* at p. 706.) "Since his presence at these proceedings was not necessary to protect his interests, assure him a fair and impartial trial, or assist counsel in defending the case, there was no error." (*Id.* at pp. 706–707.)

Here, contrary to *Ochoa,* Marks makes a showing that he *and* the prospective jurors were not only out of *earshot* but also out of *sight* during the portion of the jury selection at issue during which nothing in the record intimates that confidential matters were discussed. Here, contrary to *Holt,* Marks makes a showing that the *suitability,* not the *availability,* of the prospective jurors was at issue. Here, contrary to *Ochoa* and *Holt* alike, Marks makes a showing that, collectively, his absence and the absence of the prospective jurors from the portion of the jury selection at issue induced a breakdown in attorney-client communication about multiple peremptory challenges—especially to the prospective juror whom he and his attorney agreed should be excused but who later became the jury foreperson.

■ On the record here, Marks meets his appellate burden of showing that his right to due process was violated by the court's conducting a portion of the jury selection off the record, outside the presence of the prospective jurors, and outside his presence without his waiver, whether express or implied, oral or written, personal or by counsel.[3] (See *Kentucky v. Stincer, supra,* 482 U.S. at p. 745; *Snyder v. Massachusetts, supra,* 291 U.S. at p. 108; *Bradford, supra,* 15 Cal.4th at pp. 1356–1357; U.S. Const., 14th Amend.; Cal. Const., art. I, § 15.) In light of our holding, we will address none of his other issues on appeal.

---

[3] We note in passing the Attorney General's argument that Marks forfeited his right to appellate review by not making a timely objection. Since there is absolutely no evidence in the record of a knowing and intelligent waiver of his right to be present, we reject that argument out of hand. (Cf. *People v. Davis* (2005) 36 Cal.4th 510, 531–532 [31 Cal.Rptr.3d 96, 115 P.3d 417].)

## DISPOSITION

The judgment is reversed and a new trial is ordered. (Pen. Code, § 1260.)

Hill, J., and Kane, J., concurred.

A petition for a rehearing was denied July 27, 2007.