Filed 8/24/16  P. v. Ward CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B263316 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA392093) |
| v. | |
| JAMES VERNON WARD, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Craig J. Mitchell, Judge.  Reversed with directions.

Barbara A. Smith, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Steven D. Matthews, Supervising Deputy Attorney General, and David E. Madeo, Deputy Attorney General, for Plaintiff and Respondent.

_____

Defendant James Vernon Ward appeals from a judgment that was reinstated following a limited remand for the hearing and determination of whether the prosecutor's reasons for exercising a peremptory challenge against a prospective juror were race-neutral.  Defendant contends that the trial court violated his due process right to be present at the hearing by conducting it outside his presence.  We agree.

## BACKGROUND

In 2012 a jury convicted defendant of five counts of second degree robbery, four counts of attempted second degree robbery, two counts of grand theft auto, and single counts of possession of a firearm by a convicted felon and assault with a firearm.  The jury further found true gang enhancement allegations attached to each count and allegations that a principal was armed with a firearm in the commission of every robbery and attempted robbery, and the assault with a firearm.  The trial court found true allegations defendant had suffered two prior serious felony convictions within the scope of the "Three Strikes" law and Penal Code section 667, subdivision (a)(1), and sentenced defendant to consecutive third strike terms of 25 years to life in prison for every count, plus gang and firearm enhancements, for an aggregate sentence of 454 years to life in prison.

In his original appeal, defendant contended, and we agreed, that the trial court erred in ruling on his motion pursuant to *People v. Wheeler* (1978) 22 Cal.3d 258, 276–277 (*Wheeler*) and *Batson v. Kentucky* (1986) 476 U.S. 79, 85, 96–99 [106 S.Ct. 1712] (*Batson*), which was made to challenge the prosecutor's use of peremptory challenges against two African-American jurors.  The trial court found defendant had shown a prima facie case of group bias, but overruled the objection after the prosecutor stated her reasons with respect to only one of the two jurors.  We conditionally reversed the judgment, remanding the matter for the trial court to "attempt to perform the second and third stages of the *Batson*/*Wheeler* analysis.  The court should require the prosecutor to explain her peremptory challenge of Prospective Juror No. 4.  If the prosecutor offers a race-neutral explanation, the court must attempt to make a sincere and reasoned

2

evaluation of that explanation.  If the court finds that, due to the passage of time or any other reason, it cannot adequately address the issues at this stage or make a reliable determination, or if it determines that the prosecutor improperly challenged Prospective Juror No. 4, it should set the case for a new trial.  If it finds the prosecutor exercised her peremptory challenges in a permissible fashion, it should reinstate the judgment." (*People v. Ward* (Oct. 24, 2014, B244947) [nonpub. opn.].)

Upon remand, the trial court conducted the hearing as directed on March 5, 2015, but defendant was not present.  The record does not reflect whether the trial court refused to order defendant transported for the hearing or simply failed to do so.  Nor does the record reflect any waiver by defendant of his right to be present.  The record reflects only that when the court commenced the hearing, it stated, "Mr. Ward is not before the court. He is currently serving time in state prison on this case."

After denying a defense motion to dismiss because more than 60 days had elapsed since remittitur, the trial court asked the prosecutor to "articulate . . . a race-neutral justification for exercising a peremptory challenge as to Prospective Juror No. 4."  The prosecutor responded that Prospective Juror No. 4 "was a social worker at Cal Works. . . . It's been my experience—well, social workers can be quite—they rely on sympathy oftentimes, and I found, in my experience, that I don't particularly like to have a social worker sitting on my jury.  [¶]  That was evidence also by the record in this case because out of the total jurors, which were over 80, there were three social workers in the panel, and I asked and used a peremptory on all three of those individuals who came after Juror No. 4."  She continued, "Second, he made a statement that you have to wear different hats, and while that generally is true, coupled with the fact that he was a social worker, made me concerned that perhaps sympathy would play too much of a role in his deliberations, and as the court is aware, sympathy is not something that a juror is to consider."

The prosecutor added that the reporter's transcript reflected that "defense counsel was asking a question who [*sic*] was sitting in juror spot No. 3, and the record indicates

3

and shows that Juror No. 4 was nodding along in response.  [¶]  And it's my personal opinion that I always take note if a juror is responding positively to the defense as opposed to the prosecution.  I don't remember him ever doing that type of a non-verbal communication with me, so I took that as another indication that perhaps he wasn't a juror that the People would want."

Finally, the prosecutor noted that on September 10, 2012, the reporter's transcript indicated that Prospective Juror No. 4 was "missing from the panel.  I've had a prior trial where I didn't pay attention to that fact, and that juror in my other case was late almost every single day, which made the rest of the jurors upset, and he ended up being the one that hung the jury in that other case.  [¶]  So because of that, I always try to pay attention to if a juror is late or missing when all other juror members are present.  I think that it can show their attitude towards the court and the case, and I wanted to make sure that we had a jury that was paying attention, that took it seriously, and that coming to court on time was a priority to the jurors, and he was late that one day."

The court responded:  "Very well.  The court is satisfied, based on Ms. Forsberg's articulation this morning, that there was a non-cognizable class justification for Ms. Forsberg's exercise of the peremptory challenge with respect to the juror in question, Juror No. 4.  [¶]  Consequently, the court believes and is holding that, as I just indicated, the exercise of the peremptory challenge conforms with the lawful exercise of such challenges, the *Batson-Wheeler* motion as to both Jurors No. 4 and 10 is found to be appropriate, and the *Batson-Wheeler* motion is respectfully denied."

Defense counsel then addressed the court:  "I went through the transcripts.  I went through my notes.  Even after doing that, I have no specific recollection as to Juror No. 4. I wish I did, but I don't, so I'm really not in a position one way or the other to challenge or add anything different.  [¶]  I do feel that Mr. Ward is somewhat disadvantaged because of my lack of recollection and my ability to challenge, but if the court is indicating that you have personal recollection that is in agreement with Ms. Forsberg, I don't doubt her, what she's stating, but memories and things are affected.  [¶]  So I just

4

think that at this point Mr. Ward—I'm not capable, on his behalf, to challenge the assertions made by counsel."

The court replied: "I do have independent recollection, and if counsel can see the stickies that protrude from my copy of the transcripts, I read and reread the voir dire examination to refresh my memory as to that portion of the proceedings, and they conform with what Ms. Forsberg has articulated today."

## DISCUSSION

A defendant has a federal constitutional right emanating from the due process clause of the Fourteenth Amendment to be present at any stage of the criminal proceedings " 'that is critical to its outcome if his presence would contribute to the fairness of the procedure.' " (*People v. Bradford* (1997) 15 Cal.4th 1229, 1356–1357.) "Due process 'clearly requires that a defendant be allowed to be present "to the extent that a fair and just hearing would be thwarted by his absence." ' " (*People v. Marks* (2007) 152 Cal.App.4th 1325, 1332–1333 (*Marks*).) In addition, article I, section 15 of the California Constitution and Penal Code sections 977 and 1043 establish a defendant's right to be personally present at critical proceedings. (*Bradford*, at p. 1357.) A defendant does not have a constitutional right to be present when " ' " 'presence would be useless, or the benefit but a shadow.' " ' " (*People v. Panah* (2005) 35 Cal.4th 395, 443.) Thus, it has been held, for example, that a defendant does not have a right to be present for argument between the parties regarding admissibility of certain evidence, rereading of testimony, discussions of voir dire procedures or jury instructions, or in-chambers or at-bench discussions. (*People v. Butler* (2009) 46 Cal.4th 847, 864–865; *People v. Harris* (2008) 43 Cal.4th 1269, 1306–1307.)

Under the circumstances, the hearing on remand was critical to the outcome of the proceedings because it was to determine whether defendant received a new trial or the judgment against him was reinstated. In the posture of the remand, two and one-half years after voir dire, where defense counsel had no recollection, admittedly could not effectively represent defendant, and essentially deferred to the court's and the

5

prosecutor's assertions, defendant's presence would have contributed to the fairness of the procedure by allowing him to communicate with his attorney to convey his own recollections regarding Prospective Juror No. 4 and other prospective jurors and to assist counsel during the hearing. Unlike the court and counsel, who would have conducted voir dire in a large number of trials both before and after defendant's trial, for defendant the trial was a relatively unique experience. Thus, defendant's recollection would not have been diminished or confused by engaging in the same type of activity with a lengthy parade of different jurors in other trials. Moreover, because defendant's liberty for the remainder of his life was at stake, the prospective jurors and the jury selection process may have created more vivid and enduring memories for him than for any of the other participants. While we cannot say with certainty that defendant would have been able to convey any information to counsel that would have persuaded the court to conclude that the prosecutor's stated reasons were not genuine, given defense counsel's complete inability or failure to protect defendant's interests at the hearing, we conclude defendant's absence thwarted a fair and just hearing. As defendant argues, "If he could not help refresh his attorney's recollections, he could at least have taken exception to her in effect conceding the issue."

A case upon which defendant relies, *Marks*, *supra*, 152 Cal.App.4th 1325, is somewhat instructive. There, following voir dire in open court, the trial court forced counsel to make their peremptory challenges in chambers, outside the presence of both Marks and the prospective jurors. In the process, defense counsel forgot to challenge a prospective juror who had said he believed that an innocent defendant would testify in his own defense to " 'clear it up.' " (*Id.* at p. 1330.) When the judge returned and announced that the jury had been selected, Marks asked his attorney why the juror in issue was still there, and counsel admitted he had forgotten about that juror. That juror was selected as the foreperson and wrote a note to the court asking if defense counsel could explain why Marks was found in possession of one of the stolen items. (*Id.* at pp. 1329–1332.) On appeal Marks contended his due process right to presence was violated by the exercise of

6

peremptory challenges in chambers. (*Id.* at p. 1327.) In *Marks*, the appellate court distinguished the trial court's unique procedure from *People v. Ochoa* (2001) 26 Cal.4th 398, in which a court had conducted "sidebar inquiries of prospective jurors whose jury questionnaires designated certain items 'confidential' " (*id.* at p. 433) and *People v. Holt* (1997) 15 Cal.4th 619, in which the court conducted an "in-chambers discussion of juror hardship forms" (*id.* at p. 706, fn. 29): "Here, contrary to *Ochoa*, Marks makes a showing that he *and* the prospective jurors were not only out of *earshot* but also out of *sight* during the portion of the jury selection at issue during which nothing in the record intimates that confidential matters were discussed. Here, contrary to *Holt*, Marks makes a showing that the *suitability*, not the *availability*, of the prospective jurors was at issue. Here, contrary to *Ochoa* and *Holt* alike, Marks makes a showing that, collectively, his absence and the absence of the prospective jurors from the portion of the jury selection at issue induced a breakdown in attorney-client communication about multiple peremptory challenges—especially to the prospective juror whom he and his attorney agreed should be excused but who later became the jury foreperson." (152 Cal.App.4th at p. 1334.) The appellate court therefore found Marks's due process right to be present had been violated and reversed the judgment. (*Ibid.*)

As in *Marks*, defendant could be neither seen nor heard during the hearing upon remand, and his absence resulted in a complete breakdown in attorney-client communication. Just as in *Marks*, had defendant been present he could have communicated with defense counsel, reminded her of factual matters regarding the prospective jurors and jury selection that she could have raised at the hearing, and he could have prodded counsel to represent his interests more effectively.

The Attorney General argues, "The remand hearing concerned solely a question of law: whether the prosecution's articulation of her reasons for excusing Juror No. 4 was within the allowable standard of the *Batson*/*Wheeler* analysis." The Attorney General is wrong. First, the prosecutor's reasons are themselves factual matters. Next, the trial court was required to make a sincere and reasoned attempt to evaluate the explanation for

7

each challenged juror in light of the circumstances of the case, trial techniques, examination of prospective jurors, and exercise of peremptory challenges. (*People v. Fuentes* (1991) 54 Cal.3d 707, 718.) Each of the enumerated factors is a factual matter. The court was required to determine whether a valid reason existed and actually prompted the exercise of each questioned peremptory challenge. (*Id.* at p. 720.) These determinations are factual, not legal, in nature. The trial court's proper focus is the subjective genuineness of the nondiscriminatory reasons stated by the prosecutor. (*People v. Reynoso* (2003) 31 Cal.4th 903, 924.) "[T]he issue comes down to whether the trial court finds the prosecutor's race-neutral explanations to be credible." (*Miller-El v. Cockrell* (2003) 537 U.S. 322, 339 [123 S.Ct. 1029].) The prosecutor's genuineness and credibility are also factual matters. In short, the remand exclusively entailed factual matters and factual determinations and defendant's presence would have contributed to both the fairness and accuracy of the procedure.

We note that the *Batson*/*Wheeler* motion was made and heard at the bench. Thus, had the trial court not committed its original error of failing to ask the prosecutor her reasons for exercising a peremptory challenge against Prospective Juror No. 4, defendant would not have been personally present for the prosecutor's explanation, any response by defense counsel, or the trial court's ruling. However, there was far less, if any, need for defendant's presence at that time because voir dire would have been fresh in the minds of counsel and the court, and the court could have observed the remaining prospective jurors when considering the prosecutor's sincerity. During the remand hearing, the characteristics of individual prospective jurors and the mix of prospective jurors were not fresh in the minds of the court or counsel. The court and the prosecutor acquired some degree of recollection by reading the reporter's transcript of voir dire, but defense counsel had no pertinent recollection even after reading the transcript. Defendant's presence was therefore necessary to contribute to the fairness of the procedure.

Accordingly, we once again conditionally reverse for the trial court to conduct the same type of hearing, this time in defendant's presence. Although defendant argues for

8

an outright reversal, citing the passage of time and faded memories, an attempt should be made to perform the second and third stages of the *Batson*/*Wheeler* process in defendant's presence. As noted in *People v. Johnson* (2006) 38 Cal.4th 1096, 1103, and our prior opinion in this case, if the trial court reinstates the judgment after performing the *Batson*/*Wheeler* analysis following a limited remand, the defendant may appeal that ruling and a third reversal may be appropriate.

## DISPOSITION

The judgment is reversed and the cause is remanded to the trial court, which must—in the presence of defendant Ward—attempt to perform the second and third stages of the *Batson*/*Wheeler* analysis. The court should require the prosecutor to explain her peremptory challenge of Prospective Juror No. 4. If the prosecutor offers a race-neutral explanation, the court must attempt to make a sincere and reasoned evaluation of that explanation. If the court finds that, due to the passage of time or any other reason, it cannot adequately address the issues at this stage or make a reliable determination, or if it determines that the prosecutor improperly challenged Prospective Juror No. 4, it should set the case for a new trial. If it finds the prosecutor exercised her peremptory challenges in a permissible fashion, it should reinstate the judgment.

NOT TO BE PUBLISHED.


LUI, J.

We concur:


ROTHSCHILD, P. J.


CHANEY, J.

9