Filed 8/16/24  P. v. Atwood CA2/6
Opinion following transfer from Supreme Court

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> DONALD ATWOOD, <br><br> Defendant and Appellant. | 2d Crim. No. B304822 <br> (Super. Ct. No. 2015014383) <br> (Ventura County) <br><br> OPINION ON TRANSFER FROM THE SUPREME COURT |

A jury found Donald Atwood guilty of two counts of continuous sexual abuse of a child under 14 years of age (counts 1 and 2) in violation of Penal Code[1] section 288.5, subdivision (a). The jury also found true, as to count 2, that Atwood committed the acts against more than one victim pursuant to section 667.61, subdivision (e)(4).  Atwood was found guilty of one count of a lewd act on a child (count 3) in violation of section 288, subdivision (a), and that the victim was under 14 years of age pursuant to section

---

[1] All statutory references are to the Penal Code unless stated otherwise.

667.61, subdivision (j)(2).  Finally, the jury found him guilty of one count of possession of child pornography (count 4) in violation of section 311.11, subdivision (a).

The trial court sentenced Atwood to an aggregate term of 65 years to life.

In the original appeal, Donald Atwood contended that he did not have adequate notice he was facing on count 2 of the complaint, a 25-years-to-life sentence pursuant to section 667.61, subdivision (j)(2), instead of a 15-years-to-life sentence pursuant to section 667.61, subdivision (e)(4).  Relying on *In re Vaquera* (2019) 39 Cal.App.5th 233 (*Vaquera I*), we concluded that Atwood had adequate notice.  Our Supreme Court reversed and transferred this matter to the Court of Appeal on May 15, 2024, with directions to vacate our decision filed on December 22, 2021, and reconsider in light of *In re Vaquera* (2024) 15 Cal.5th 706 (*Vaquera II*).  Having reconsidered the matter in light of *Vaquera II*, we remand to the trial court for resentencing to 15 years to life on count 2.  In all other respects, we affirm.

FACTS

Atwood and J.H. were married for about 20 years.  J.H. had two adult children from prior relationships, J. and J. (Adult Son and Adult Daughter).  Adult Son and his wife have two children, P. (Child 1) and M. (Child 2).  Adult Daughter has three children, H. (Child 3), I. (Child 4), and A. (Child 5).

Atwood and J.H. lived in the back half of a duplex.  Adult Son and his wife lived in the front half of the duplex with their children.  Adult Daughter's children, Child 3 and Child 4, often spent the weekend at Atwood's house.

Adult Daughter died in August 2017 prior to trial.

Atwood had a small office with a computer in a shed in the

2

backyard of his duplex.  He did not allow his wife or other adults to use the computer.  Atwood molested three of the children in his office and other areas of his home.

### *Child 3*

Child 3 was born in February 2003.  Atwood first touched her when she was three or four years old.  He touched her vagina both over and under her underwear.  He also placed his mouth on her vagina.

Child 3 told her mother (Adult Daughter).  Her mother reported the matter to her own mother, J.H. J.H. confronted Atwood.  Atwood explained the matter away, so that J.H. was not sure anything happened.  No one did anything about it.  Atwood touched and licked Child 3 repeatedly after that.  He would also place his finger inside her vagina.

Atwood would also lift up the girls' shirts or pressure them to show their breasts.  He did this around other people.  J.H. told him it was inappropriate, but he passed it off as a joke.  Atwood threatened to harm Child 3 or her sisters if Child 3 told anyone.  He said no one would believe her.  She believed him because nothing happened when she told her mother the first time.

Atwood touched Child 3 for the last time when she was 10 years old.  Child 3 told her mother a second time after her mother showed her a text message from Atwood to mother, criticizing mother's actions over an altercation some time ago in Big Bear that resulted in mother's arrest.  Child 3 felt safe telling her mother because she believed she would not be seeing Atwood soon.

Adult Daughter called the police.  Child 3 was uncomfortable telling the police what happened so her mother told her to write it down.  Child 3 wrote alone in her room.

### Child 4

Child 4 was born in December 2007. Child 4 was four to six years old when Atwood touched her for the first time. The girls would play on the computer with Atwood in his office. Because there was only one chair, they would sit on his lap.

Atwood touched Child 4's vagina over and inside her underwear. He also placed his finger in her vagina. He licked her vagina many times. This happened almost every weekend when she was in preschool. She also saw him do the same to Child 1.

Atwood told Child 4 not to tell anyone. She believed Atwood meant that if she told anyone, he would hurt her family.

The last time Atwood touched her was after he picked the children up from Big Bear in April 2015. Child 4's mother (Adult Daughter) asked her if Atwood ever touched her in an odd way. Child 4 told her mother that he did but did not give her mother any details. Her mother did not tell her what to say to the police. Child 4 did not tell Child 1 or Child 3 what Atwood had done to her.

### Child 1

Child 1 was born in April 2010. Child 1 went to Atwood's house before and after school. She spent time alone with him. She played games on Atwood's computer. Sometimes she sat on his lap.

When Child 1 was four years old, Atwood touched her private parts when they were in his office. It happened more than once.

In April 2019, Child 1 learned that J.H. had bailed Atwood out of jail. Child 1 no longer wanted to speak to her grandmother because she believed she did not support her. Neither Child 1

4

nor her parents spoke to J.H. anymore. Child 1 was afraid of Atwood at the time of trial.

*Child Pornography*

Atwood called J.H. from jail, and told her to get rid of the computer in his office. When the police arrived at Atwood's home to execute a search warrant, the computer was not there. The police told J.H. that she could be criminally liable if she was hiding evidence. Thus persuaded, she turned the computer over to the police.

The next day Atwood called J.H. and asked if she had gotten rid of the computer before the police arrived. She told him she did not have a chance to do so. Atwood replied, "Oh, my God, damn, [J.H.] . . . fuck . . . oh, fuck."

A forensic examination of Atwood's computer showed that he had been visiting sites containing child pornography.

*CSAAS Testimony*

Jody Ward, an expert on child sexual abuse, testified about Child Sexual Abuse Accommodation Syndrome (CSAAS). Ward said that CSAAS helps adults understand that behaviors of sexually abused children are often counterintuitive or unexpected. Ward did not know the facts of the case, and CSAAS is not intended to show that the victims in this case are telling the truth.

Children tend to keep sexual abuse secret for a long time even without threats. Children are helpless because they are taught to listen to adult authority figures and they lack the mental and physical capacity to fight back. Because of secrecy and helplessness, children learn to accommodate the abuse. They often act as if nothing is happening. They typically will not act frightened of the perpetrator. Children's disclosure of abuse is

5

often conflicted or unconvincing. It is even more embarrassing for a child than an adult to discuss sexual matters. Finally, sometimes children recant once the consequences of disclosure – intrusive interviews, physical examinations, upended home life – occur.

## DISCUSSION

### I. Illness During Jury Selection

Atwood contends the trial court erred in denying his motions for a continuance or mistrial due to his illness during jury selection.

A criminal defendant has the constitutional right to be present at any stage of the proceeding that is critical to the outcome and where the defendant's presence would contribute to the fairness of the proceeding. (*People v. Harris* (2008) 43 Cal.4th 1269, 1306.) We assume, without deciding, that jury selection is such a stage. (See *People v. Marks* (2007) 152 Cal.App.4th 1325, 1332 [jury selection outside of defendant's presence a violation of due process]; but see *People v. Ferguson* (1932) 124 Cal. App. 221, 225-227 [no violation of defendant's rights where court examined prospective jurors outside of defendant's presence]; *People v. Gonzales* (2012) 54 Cal.4th 1234, 1254 [where the defendant complained that he was not present at portions of the jury selection, the court said, "Neither the state nor federal Constitution, nor the statutory requirements [for the defendant's presence at felony proceedings] require the defendant's personal appearance at proceedings where his presence bears no reasonable, substantial relation to his opportunity to defend the charges against him"].) The defendant bears the burden of demonstrating that his absence prejudiced his case or denied him a fair trial. (*Gonzales*, at p. 1254.)

6

Here Atwood was present during jury selection, but he was ill. The trial court postponed jury selection for two days because of Atwood's illness. When the trial resumed, Atwood claimed he was still very ill. The court denied his request for a continuance.

During jury selection, Atwood spent some of the time with his head on the table. The trial court asked Atwood if he was capable of going forward. Atwood answered, "As long as I can keep my head down." Later Atwood said, "I feel like I'm going to pass out or something like that. I'm not here." Atwood's counsel said, "If Mr. Atwood could just sit here that would be fine." Counsel expressed his concern that sitting with his head down would give the jury the wrong impression. The court agreed to instruct the jury that Atwood may put his head down because he is not feeling well. Atwood said he would rather have a continuance. The court denied the request for a continuance. The court instructed the jury not to interpret Atwood's head being down as anything other than that he does not feel well.

At the end of the day, Atwood's counsel told the trial court that Atwood was too ill to assist in jury selection. Counsel moved for a mistrial.

In opposition, the prosecutor stated: "Mr. Atwood is sitting straight up and appearing alert now. I don't know how much of this is malingering. I would suggest that we have been off for two and a half days and if he was as ill as he is portraying himself to be, then he should have gotten medical attention. It's easy to say, oh, I'm so sick, I haven't been listening. But he's been here. He's seated upright now and could easily take a look at the jurors and give an opinion."

In denying the motion for a mistrial, the court stated: "[M]y observations have been similar [to those of the prosecutor].

[Atwood has] had his head down at various times. He's been sitting up. He's had his head in his hands at various times. He's been coughing. I don't doubt that he's sick. But I don't think that that rises to the level of granting a mistrial. Particularly we were dark for two and a half days specifically because he was sick and to give him time to recover and address that issue medically and professionally if that was necessary. I haven't heard anything that there was any type of doctor note or indication that he's so sick that he can't be here and participate."

The trial court found that Atwood did not appear so ill that he could not assist counsel, but nevertheless postponed the trial for two days during which time Atwood could have sought medical attention. When the trial resumed, Atwood did not bring a note or report from a doctor attesting to his medical condition. The court had ample opportunity to observe Atwood during jury selection. The court determined that Atwood was well enough to fully participate in his trial. Nothing in the record is sufficient to contradict that finding.

*II. Excluded Evidence*

Atwood contends the trial court erred in excluding evidence tending to show the victim's biases and motive to make exaggerated and false claims against him. He wanted to introduce the following evidence regarding Adult Daughter's character:

1) The same month Adult Daughter reported Atwood to the police, she was arrested for assaulting her sister-in-law.

2) When Adult Daughter was a child, she reported she had been sexually abused by the father of her stepbrother. The person who Adult Daughter accused was not arrested or charged. He was removed from the home and ordered to take a parenting

8

class.  Atwood wanted to ask J.H., Adult Daughter's mother, whether she believed her.

The trial court excluded the evidence under Evidence Code section 352.  The court, however, allowed Atwood to ask J.H. whether Adult Daughter made an allegation of sexual abuse when she was in seventh grade.

Atwood argues the excluded evidence was crucial to his defense.  He claims it shows Adult Daughter was unstable and vindictive, that she had motives for encouraging the girls to make false allegations, and that the girls in turn had motives to protect their mother.

Evidence Code section 352 provides: "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

Atwood wanted to divert the jury's attention to Adult Daughter who was deceased.  But Adult Daughter's credibility was not at issue.  The principal issue at trial was the credibility of the three girls who testified against Atwood.

The best that Atwood could hope for is that the jury would draw the inference from the excluded evidence that Adult Daughter influenced her daughters to lie about what he did.  But no such inference was necessary.  Child 3 testified about what her mother told her.  Her mother said, "[I]f I wanted anything to happen or come out of it . . . [my mother's] goal was to have him go to jail I guess . . . [my mother] had said that I should overexaggerate, not lie but over-exaggerate on . . . what I was telling the officers – or officer, but I had – that felt wrong to me.

9

It didn't – that didn't feel right.  I knew that was wrong.  Like, it's just not something you do, and I had told her, like – that I'm not going to do that because I don't – I don't see why I should have to exaggerate or lie . . . to get help."

The jury believed Child 3 even though her mother told her to exaggerate what happened.

In addition, Child 1 testified that Atwood molested her.  Child 1 was not one of Adult Daughter's daughters.  Child 1's testimony corroborated the testimony of Child 3 and Child 4.

Finally, Atwood's computer showed he viewed multiple sites containing child pornography.  Thus, Atwood had a sexual interest in children.

The evidence the trial court excluded involved collateral matters and had little, if any, relevance.  The court was well within its discretion to exclude evidence under Evidence Code section 352.

### III. CSAAS Evidence and CALCRIM No. 1193

#### (a) Admissibility of CSAAS Evidence

Atwood contends that the trial court erred in admitting expert testimony regarding CSAAS because it does not meet the *Kelly* test for scientific reliability.[2]  (*People v. Kelly* (1976) 17 Cal.3d 2.)  We rejected that argument in *People v. Munch* (2020) 52 Cal.App.5th 464, 472-473.

---

[2] "Formerly known as the *Kelly-Frye* rule, based on the rulings of *People v. Kelly* (1976) 17 Cal.3d 24 (*Kelly*) and *Frye v. United States* (D.C. Cir. 1923) 293 F. 1013, the rule is now the *Kelly* rule in California after changes to the Federal Rules of Evidence that superseded *Frye*."  (*People v. Nieves* (2021) 11 Cal.5th 404, 442, fn. 8.)

(b) CALCRIM No. 1193

The trial court instructed the jury with a former version of CALCRIM No. 1193 [3] as follows:

"You have heard testimony from Dr. Jody Ward regarding child sexual abuse accommodation syndrome.

"Dr. Jody Ward's testimony about child sexual abuse accommodation syndrome is not evidence that the defendant committed any of the crimes charged against him.

"You may consider this evidence only in deciding whether or not an alleged victim's conduct was not inconsistent with the conduct of someone who has been molested, and in evaluating the believability of her testimony."

Atwood contends the former instruction deprived him of due process by reducing the prosecution's burden of proof. We have also previously rejected that contention. (*People v. Munch*, *supra*, 52 Cal.App.5th at pp. 473-474; *People v. Gonzalez* (2017) 16 Cal.App.5th 494, 504 (*Gonzalez*).)

Atwood claims there was a conflict in the former instruction. The second sentence of the former instruction tells the jury that CSAAS evidence is not evidence that the defendant committed the crimes charged against him. Atwood argues the third sentence of the former instruction contradicts the second sentence by telling the jury that it may consider the evidence in determining whether or not the alleged victim's conduct was consistent with someone who had been molested.

---

[3] Since Atwood's trial, CALCRIM No. 1193 has been revised three times, most recently in a September 2022 supplement. Because the jury was instructed with a previous version of CALCRIM No. 1193, "former" is used where necessary for ease of reference.

11

But as we said in *Gonzalez* in rejecting the same argument: "The purpose of CSAAS is to understand a child's reactions when they have been abused. [¶] A reasonable juror would understand CALCRIM No. 1193 to mean that the jury can use [the expert's] testimony to conclude that [the child's] behavior does not mean she lied when she said she was abused. The jury also would understand it cannot use [the expert's] testimony to conclude [the child] was, in fact, molested. *The CSAAS evidence simply neutralizes the victim's apparently self-impeaching behavior.* Thus, under CALCRIM No. 1193, a juror who believes [the expert's] testimony will find both that [the child's] apparently self-impeaching behavior does not affect her believability one way or the other, and that the CSAAS evidence does not show she had been molested. There is no conflict in the instruction." (*Gonzalez*, *supra*, 16 Cal.App.5th at p. 504, italics added.)

Atwood claims the phrase "not inconsistent with," as used in former CALCRIM No. 1193 at the time of the trial, was confusing. He points out that "not inconsistent with" means the same as "consistent with." Atwood argues that the jury could determine that if the victim's conduct was consistent with CSAAS evidence, the victim's claims must be true.

But former CALCRIM No. 1193 does not instruct that the jury can use CSAAS to determine that the complaining victim's claims must be true. Instead, it instructs that the jury can consider CSAAS evidence only in deciding "whether or not" the victim's conduct was consistent with the conduct of someone who has been molested. Moreover, Ward repeatedly testified that she was not familiar with the facts of the case and that her testimony could not be used to assess the truth of any claim of abuse.

12

Atwood claims CALCRIM No. 1193 violates the rule that the instructions must reflect "absolute impartiality as between the People and the defendant." (Citing *People v. Moore* (1954) 43 Cal.2d 517, 526.) Atwood argues that the instruction ignores the defensive inference that the victim's conduct might suggest falsity.

But the "whether or not" language in the instruction tells the jury that it is free to credit the defense evidence and find not. The instruction is impartial.

Moreover, the jury was instructed with CALCRIM No. 226, "In evaluating a witness's testimony, you may consider anything that reasonably tends to prove or disprove the truth or accuracy of that testimony. Among the factors that you may consider are: . . . Has the witness engaged in [other] conduct that reflects on his or her believability?" Thus the jury is expressly invited to consider the conduct of the complaining witnesses in assessing their credibility.

*IV. 25-Years-to-Life Sentence on Count 2*

Atwood contends he was denied due process when the trial court sentenced him to 25 years to life on count 2 under section 667.61, subdivision (j)(2), even though subdivision (j)(2) was not alleged as to count 2.

The jury convicted Atwood on count 2 of continuous sexual abuse of a child under 14 years of age in violation of section 288.5, subdivision (a). The jury also found true that Atwood committed the offense against more than one victim pursuant to section 667.61, subdivision (e)(4).

The trial court sentenced Atwood to 25 years to life pursuant to section 667.61, subdivision (j)(2).

13

Section 667.61 is known as the "one strike law." It provides for a life sentence for anyone convicted of sex crimes listed in subdivision (c) of the section under aggravating circumstances listed in subdivisions (d) and (e). (§ 667.61, subds. (c), (d), (e).) Section 667.61, subdivision (c)(9) lists continuous sexual abuse of a child in violation of section 288.5. Section 667.61, subdivision (e) lists aggravating circumstances, including that the defendant has been convicted in the case of a qualifying offense against more than one victim. (*Id.* at subd. (e)(4).) Section 667.61, subdivision (j)(2) provides: "A person who is convicted of an offense specified in subdivision (c) under one of the circumstances specified in subdivision (e), upon a victim who is a child under 14 years of age, shall be punished by imprisonment in the state prison for 25 years to life."

Atwood argues he was denied due process because he had no notice that he could be sentenced under section 667.61, subdivision (j)(2).

It is a fundamental rule of due process that the defendant must be given fair notice of any alleged crimes in order to mount a possible defense. (*In re Hess* (1955) 45 Cal.2d 171, 175.) The defendant's right to fair notice also applies to allegations that will be invoked to increase punishment for his crimes. (*People v. Houston* (2012) 54 Cal.4th 1186, 1227.)

### (a) *Vaquera I*

In deciding Atwood was not denied due process, we relied on *Vaquera I*, *supra*, 39 Cal.App.5th. In *Vaquera I*, the information alleged that the defendant committed lewd and lascivious acts against two children under age 14. It also alleged multiple victims. The information referenced section 667.61, subdivision (b), providing for a 15-years-to-life sentence, instead

14

of subdivision (j)(2), providing for a 25-years-to-life sentence. Nevertheless, the court upheld a 25-years-to-life sentence under subdivision (j)(2).

The Court of Appeal reasoned that an accusatory pleading does not have to state the number of the statute. (*Vaquera I*, *supra*, 39 Cal.App.5th at p. 239.) Nor does a sentence enhancement need to state the number of the statute. (*Ibid.*) The pleading is sufficient if it gives the defendant notice of the offense of which he is accused, apprises the defendant of the potential for the enhanced penalty, and alleges every fact and circumstances necessary to its applicability. (*Ibid.*) Even a pleading that alleges a wrong-numbered statute may still be valid. (*Ibid.*)

The Court of Appeal pointed out that the information gave the defendant notice that he would be subject to the 25-years-to-life sentence. It alleged qualifying offenses under section 667.61, subdivision (c) against children under 14 years of age and multiple victim aggravating circumstances under subdivision (e). (*Vaquera I*, *supra*, 39 Cal.App.5th at p. 240.) The Court of Appeal acknowledged that the information referenced section 667.61, subdivision (b). But the Court of Appeal pointed out that section 667.61, subdivision (b) references subdivision (j) of that section as an exception to its provisions. (*Vaquera I*, at p. 242.)

(b) Supreme Court Reversal of *Vaquera I*

Our Supreme Court reversed *Vaquera I* in *Vaquera II*, *supra*, 15 Cal.5th 706. In reversing, our Supreme Court stated: "The One Strike . . . did not specify that the one prosecution was seeking 25 years to life on that count, cite to subdivision (j)(2), or otherwise make clear that the prosecution was seeking a longer sentence based on the victim's age. Because the allegation did

15

not inform Vaquera of the of the prosecution's intent to invoke the One Strike law circumstance on which the trial court ultimately sentenced him, the allegation failed to provide him fair notice." (*Id*. at p. 725.) Our Supreme Court remanded to the Court of Appeal with instructions to grant habeas corpus relief and to direct the trial court to strike the 25-years-to-life sentence and resentence Vaquera to 15 years to life on count 2. (*Id*. at p. 728.)

The People argue that our Supreme Court's opinion in *Vaquera II* can be distinguished. The People point out that here the special allegation pursuant to section 667.61, subdivision (e)(4) provides that Atwood committed a lewd and lascivious act "on a child" against more than one victim. In contrast, the one strike allegation in *Vaquera II* did not mention a child. The allegation read: "As to count(s) 2, it is further alleged pursuant to [section 667.61, subdivisions (b) and (e)(4)], that in the commission of the above offense, defendant OSCAR MANUEL VAQUERA committed an offense specified in [section 667.61, subdivision (c)] against more than one victim." (*Vaquera II, supra*, 15 Cal.5th at p. 714.)

The People argue the use of the phrase "on a child" was sufficient to advise Atwood that the prosecution was seeking a 25-years-to-life term under section 667.61, subdivision (j)(2). But the phrase "on a child" is in the context of alleging a multiple victim enhancement pursuant to section 667.61, subdivision (e)(4). Atwood could reasonably conclude that he was facing 15 years to life because of multiple victims, not 25 years to life because a victim was under age 14.

16

## V. Sentencing

Atwood contends the trial court erred in imposing consecutive sentences and inflicted cruel and unusual punishment.

The trial court sentenced Atwood on count 1 (continuous sexual abuse of a child) to 15 years to life; on counts 2 (continuous sexual abuse of a child) and 3 (lewd act on a child) to 25 years to life on each count, all to run consecutively, for a total term of 65 years to life. The court imposed on count 4 (possession of child pornography) a concurrent term of three years.

### (a) Consecutive Sentences

Atwood cites section 669 for the proposition that the trial court has the discretion to impose concurrent or consecutive sentences.

Section 667.61, subdivision (i) requires the imposition of consecutive sentences for continuous sexual abuse of a child if the crimes involve separate victims or involve the same victim on separate occasions. Thus, consecutive sentences are mandated for counts 1 and 2. The trial court only had the discretion to sentence Atwood to a concurrent sentence on count 3, lewd act on a child.

Atwood relies on California Rules of Court, rule 4.425(b). That rule limits the trial court's discretion to impose consecutive sentences. The court cannot use the same fact used to impose an upper term, the same fact used to enhance the defendant's sentence, and the same fact that is an element of the crime.

Atwood argues that the trial court's stated reason for imposing consecutive sentences was that each victim deserves an independent sentence. He claims that multiple victims was a factor in his enhanced sentence under section 667.61.

17

But that is not the only reason the trial court imposed consecutive sentences.  The court stated that Atwood refused to take responsibility and that he tried to shift blame to the victims and Adult Daughter.  Any one of those reasons is sufficient to support consecutive sentences.

Atwood has failed to carry his burden to show an abuse of discretion in sentencing him to a consecutive sentence on count 3.

(b) Cruel and Unusual Punishment

The Eighth Amendment to the United States Constitution prohibits cruel and unusual punishments.  A punishment is excessive under the Eighth Amendment if it makes no measurable contribution to the acceptable goals of punishment or is grossly out of proportion to the severity of the crime.  (*Coker v. Georgia* (1977) 433 U.S. 584, 592.)

Atwood argues that he was 58 years old at the time of sentencing.  He cannot conceivably complete a 65-year term.  He claims a sentence that a human being cannot conceivably complete serves no rational purpose.

But it serves the rational purpose of giving the victims some peace of mind knowing that Atwood will never be able to hurt them or some other child again.

Moreover, the Eighth Amendment does not apply unless the sentence is grossly out of proportion to the severity of the crime.  (*Coker v. Georgia*, *supra*, 433 U.S. at p. 592.)  Suffice it to say, Atwood molested three little girls over a period of time.  His sentence is not grossly disproportionate to the severity of the crime.

Atwood's reliance on the concurring opinion of Justice Mosk in *People v. Deloza* (1998) 18 Cal.4th 585 is misplaced.  There the trial court sentenced the defendant to consecutive sentences for

18

four armed robberies plus two prior convictions constituting strikes within the meaning of the "Three Strikes" law, for a total of 111 years to life. Our Supreme Court reversed and remanded for resentencing because the trial court erroneously concluded that consecutive sentences were mandatory. In concurring, Justice Mosk stated that a sentence of 111 years violates the Eighth Amendment because it is impossible for a human being to serve it. (*Deloza*, at pp. 600-601.) Justice Mosk decried "multicentury sentences." (*Id.* at p. 601.)

First, 65 years is not a "multicentury sentence." Second, a concurring opinion has no controlling weight. (*People v. Byrd* (2001) 89 Cal.App.4th 1373, 1383.) Third, Atwood points to no case in which the majority of our Supreme Court has adopted Justice Mosk's opinion. Fourth, at least one Court of Appeal has expressly rejected it. (*Ibid.*)

VI. *Assessments*

Atwood contends the trial court erred in assessing him with a $1,350 restitution fine (§ 1202.4, subd. (b)), a $10,000 restitution fund fine (§ 294), and a $2,000 and $7,200 sexual offense fine with penalty assessment (§ 290.3) without holding a hearing on his ability to pay. Atwood relies on *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*). There the court held that due process required a hearing on the defendant's ability to pay before such assessments and fines may be imposed. (*Id.* at p. 1164.)

But Atwood did not request a hearing on his ability to pay or object to the imposition without a hearing. Atwood was sentenced more than a year after *Dueñas* was decided. He has waived the issue on appeal. (*People v. Aguilar* (2015) 60 Cal.4th 862, 863-864.)

19

Atwood claims that the waiver resulted from ineffective assistance of counsel. But Atwood fails to show that his counsel's representation fell below an objective standard of reasonableness. (*People v. Mayfield* (1993) 5 Cal.4th 142, 185.) When a client is facing 65 years to life, counsel has more to worry about than whether fines and assessments are properly imposed.

Moreover, *Dueñas*, *supra*, 30 Cal.App.5th, involved the homeless mother of young children who was convicted of driving with a suspended license. Given the less serious nature of the defendant's offense, it is understandable the court focused exclusively on her ability to pay in determining the appropriateness of the fines. But *Dueñas* was wrong in relying on due process, and in more serious cases it is not appropriate to focus exclusively on the defendant's ability to pay.

Atwood suggests that the fines are excessive because he lacks the ability to pay. The appropriate challenge is under the Eighth Amendment's ban on excessive fines. Where an explicit textual source of constitutional protection against an alleged harm exists, that amendment must be the guide for analyzing those claims. (*Graham v. Connor* (1989) 490 U.S. 386, 395.)

The court considers four factors in determining whether a fine is disproportionate: 1) the defendant's culpability, 2) the relationship between the harm and the penalty, 3) penalties imposed by similar statutes, and 4) the defendant's ability to pay. (*United States v. Bajakajian* (1998) 524 U.S. 321, 337-340.) Even under each due process analysis, there is no reason why the court should be confined to considering only the defendant's ability to pay. The court should consider all the factors.

First, with the possible exception of some murders, child molesting is the most reprehensible of crimes. This was not a

20

moment of aberrant behavior. Atwood molested three girls over a significant period of time. Atwood has refused to accept responsibility and has blamed the victims and their mother. Atwood's culpability alone would justify maximum fines.

Second, the harm Atwood did to his victims is incalculable. They will carry it with them for the rest of their lives.

Third, we are aware of no penalties imposed by similar statutes that would indicate the fines imposed here are disproportionate.

Fourth, even if Atwood has no present ability to pay, as the trial court pointed out, he can earn money in prison. The first two factors outweigh by far any claimed inability to pay. Atwood has failed to show he would have achieved a more favorable result had his counsel requested a hearing. (*Strickland v. Washington* (1984) 466 U.S. 668, 687.)

DISPOSITION

We reverse and remand to the trial court with directions to strike the 25-years-to-life sentence on count 2 and to resentence Atwood to 15 years to life on count 2. In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED.

GILBERT, P. J.

We concur:

YEGAN, J.            BALTODANO, J.

BALTODANO, J., Concurring:

I agree with the majority opinion except for the criticism of *People v. Dueñas* (2019) 30 Cal.App.5th 1157.  Because Atwood forfeited his objection to the imposition of fees and assessments pursuant to *Dueñas,* we need not opine on the continued validity of that case.

NOT TO BE PUBLISHED.

BALTODANO, J.

Anthony J. Sabo, Judge

Superior Court County of Ventura

_____

Arielle Bases, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Michael R. Johnsen and Blythe J. Leszkay, Deputy Attorneys General, for Plaintiff and Respondent.